IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 13, 2020

## STATE OF TENNESSEE v. JUSTIN W. WALKINGTON

**Appeal from the Circuit Court for Giles County**
**No. CR-14011     Stella L. Hargrove, Judge**

### No. M2019-01772-CCA-R3-CD

The defendant, Justin W. Walkington, appeals his Giles County Circuit Court jury conviction of child abuse of a child under the age of eight, arguing that the evidence was insufficient to support his conviction, that the trial court erred by instructing the jury that child abuse was a lesser included offense of aggravated sexual battery, that the trial court's child abuse instruction actually charged the elements of child neglect, and that the trial court erred by denying the defendant any form of alternative sentencing. We hold that the trial court erred by instructing the jury that child abuse was a lesser included offense in this case because the evidence was legally insufficient to support that charge. Additionally, the trial court's instruction on the offense of child abuse erroneously included the elements of child neglect, which charge was also unsupported by the evidence. Because the evidence was insufficient to support a conviction of either child abuse or child neglect but was sufficient to support a conviction of simple assault by offensive touching, we reverse and vacate the defendant's conviction of child abuse and remand the case to the trial court for a sentencing hearing on the offense of Class B misdemeanor assault and the entry of an amended judgment reflecting the new conviction offense and sentence.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Reversed and Vacated; Remanded

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Brandon E. White (on appeal), Columbia, Tennessee; and Hershell Koger (at trial), Assistant District Public Defender, for the appellant, Justin W. Walkington.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Emily Crafton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Giles County Grand Jury charged the defendant with two counts of aggravated sexual battery of a child less than 13 years of age for conduct involving his son, A.W.[1]

At the August 2019 trial, Pulaski Police Department Investigator Jordan Ramsey testified that he began investigating this case in August 2017 upon the referral of the Department of Children's Services ("DCS"). After conferring with the DCS caseworker, Investigator Ramsey arranged a forensic interview for the seven-year-old victim. Investigator Ramsey interviewed the defendant twice. Because the defendant was not under arrest at either of the interviews, Investigator Ramsey did not provide him with *Miranda* warnings. Investigator Ramsey stated that the defendant talked with him voluntarily and was free to leave at any point during the interviews. At the time of the alleged offenses, the defendant, his wife, and their three children were living at 114 E. Tanglewood Drive in Giles County with a woman named Jamie Bryant, Ms. Bryant's two children, and another couple.

During the interviews, Investigator Ramsey asked the defendant about his care of the victim, including "how he cares for [A.W.], how bath time works, how bedtime works, that type of thing." The defendant told Investigator Ramsey that he and the victim bathed together regularly and that the defendant would wash the victim with "a scrunchie or a sponge." At bedtime, the victim would go to bed on his own in a bedroom that he shared with Ms. Bryant's son. The defendant and his wife slept in the living room, and, at times, the defendant would wake up to find the victim in bed with them. The defendant explained that the children had slept in the bed with them on prior occasions. The defendant also told Investigator Ramsey that the victim had walked in on him and his wife having sex at least twice, and he had discovered his children watching pornography at least once. Investigator Ramsey described the defendant as acting "maybe like defensive" during the interviews, noting that the defendant "kind of already knew about what I was asking him about."

During cross-examination, Investigator Ramsey acknowledged that the defendant's defensive demeanor during the interviews could have been an indication that the defendant was offended by the accusation against him. He also acknowledged that the defendant did not admit any wrongdoing. The defendant told Investigator Ramsey that, a few weeks before the first interview, the victim had been diagnosed with scabies, and the defendant and his wife would put medical cream all over the victim's body as part of the treatment. Investigator Ramsey acknowledged that he did not follow up on that

---

[1]     As is the policy of this court, we will refer to the minor victim by his initials.

information.

On redirect examination, Investigator Ramsey testified that the indictment listed an offense date of June 1, 2017, because the victim could not recall an exact date and because the family lived at the Tanglewood residence on that date. He stated that he did not follow up on the victim's having had scabies because it was not relevant to his investigation. He also said that he did not ask the defendant about his work schedule or what times of the week that he was at home with the children.

On recross-examination, Investigator Ramsey stated that he never interviewed the victim. The victim had only one interview during the course of the investigation—the forensic interview on September 5, 2017. Investigator Ramsey could not specifically recall whether he was present during the victim's forensic interview but stated that he reviewed the recording.

Cindy Powell, the senior forensic interviewer at Kid's Place, testified that she conducted a forensic interview with the victim who was seven years old at the time. As a forensic interviewer, she asked child victims non-leading, developmentally-sensitive questions about allegations of abuse. Although the victim was unable to provide Ms. Powell with dates of the abuse, he told her what age he was when the abuse started.

During cross-examination, Ms. Powell stated that the victim told her that he was five or six years old when the abuse started, which was approximately two or three years prior to the interview. The victim did not talk about specific locations or where he was living at the time of the abuse.

On redirect examination, Ms. Powell testified that the victim told her that during the instances of abuse, he "was asleep on the couch and there were times that he was asleep on a bed on the floor." On recross examination, Ms. Powell stated that, in order to establish a time frame of events, she asked the victim if any incident "stuck out in his mind" and if he could describe it to her.

The victim, born in October 2009, was nine years old at the time of trial. He testified that, when he lived in Pulaski with his parents, the defendant "was doing some inappropriate things." The victim stated that the defendant would touch the victim's "front end," which was his term for his penis. He described one specific incident: "[O]ne time I was going to sleep with my dad in the living room when I was living in an apartment. . . . Once I was sleeping right beside my dad, he was touching me in my front end." The victim continued: "I was sleeping right beside my dad on the opposite end of where my mom sleeps and I would usually sleep, like, snuggle with my dad. And then most of the time he would usually touch my front end . . . ." The victim stated that his mother did not see what

was going on because "[s]he was sleeping on the other side of where I was sleeping." The victim said that, at the time, the family was living in an apartment with several other people. The victim slept in a bedroom, and his parents slept in the living room "on a mattress on the floor." The victim stated that he would usually go to his parents' bed when he would wake up from nightmares.

During the instances of abuse, the victim was clothed, and the defendant would touch his penis with one hand, usually "under my clothes" and "would usually move [his hand] around a little bit." Neither the defendant nor the victim spoke during the abuse. The victim stated that the abuse occurred more than once when he was "maybe five or six." The victim stated that he "finally figured out that it was not right to do, so I told my dad . . . to stop doing it because it doesn't really feel so well to me."

During cross-examination, the victim testified that some incidents of abuse occurred when he was seven years old. The victim acknowledged that he did not tell Ms. Powell that he had told the defendant to stop touching him because he "kind of forgot that day." He stated that he remembered the fact that he had told the defendant to stop touching him only on the day of trial. The victim said that he had been in foster care for the two years since the abuse was revealed, and through DCS, he had completed workbooks, including one entitled *My Body is Private*. The victim acknowledged that the workbook instructed him to tell someone to stop if they are inappropriate with his private parts. In other workbooks, he also learned to ask consent before hugging, shaking hands with, or otherwise touching another person. The victim acknowledged that the defendant never brought the victim to bed with him or got in bed with the victim. The victim stated that he did not know whether his father was awake each time that the victim got in bed with him.

During redirect examination, the victim stated that in the places he had lived prior to the Tanglewood residence, the family also had a mattress on the living room floor. The victim explained that the abuse was not ongoing from ages five to seven but that he simply could not remember "which age I was but I know it was one of those ages." The victim also clarified that, when the defendant abused him, he did not know whether the defendant "was awake or [if] he was, like, fake sleeping." The victim stated that the defendant did not ask his permission to touch his private parts.

The State rested. The court concluded that the evidence supported only one count of the indictment, and the trial proceeded as to a single count. After a *Momon* colloquy, the defendant elected to testify and put on proof.

The defendant denied that he had ever touched the victim in a sexual manner or that the victim had told him to stop touching him. The defendant also denied that he ever put his hand down the victim's pants while they were lying down together. The

-4-

defendant stated that before Investigator Ramsey interviewed him, the victim had been diagnosed with scabies, which diagnosis required that the defendant and his wife apply two topical medications to the victim daily. The defendant explained that the scabies rash was primarily on the victim's buttocks "going up to his inner thighs and genitals." Daily, the defendant and his wife applied one medical cream directly to the victim's rash and the other cream on his entire body, "neck to toe." They applied the creams by rubbing it onto the victim's body with their hands.

During cross-examination, the defendant stated that, throughout the victim's life, the defendant had touched him in a non-sexual way in caring for him, including "putting diaper rash cream [and] baby lotion" on him and bathing him. In working as a truck driver, the defendant would be on the road for one to two weeks at a time and would be home on weekends, and he assisted in caring for the victim when he was at home. The defendant acknowledged that the victim had scabies around the time of the victim's forensic interview on September 5, 2017, and that the scabies treatment had "[n]othing, I guess" to do with allegations of abuse on June 1, 2017. The defendant acknowledged that he did not apply any creams for scabies treatment to the victim in June and, again, denied that he touched him inappropriately. The defendant stated that, at the Tanglewood residence, he and his wife slept on a pallet on the living room floor. He also said that, from the time the victim began to walk, the victim would get up in the night and get in bed with them, and the defendant would wake up to find him in the bed. Because there was only one bathroom at the Tanglewood residence, which the family shared with four other people, the defendant and the victim would shower together. He reiterated that he had never touched the victim inappropriately.

Mary Hyatt, the records custodian at Just for Kids primary care and walk-in pediatric clinic, testified that the victim had visited the clinic three times—November 5, 2013, August 21, 2017, and October 4, 2017. Although the record of August 21 referred to the victim by a different last name, Ms. Hyatt confirmed that the record was that of the victim based on the date of birth, social security number, and patient account number.

During cross-examination, Ms. Hyatt explained that a patient's name may be different on a record for numerous reasons, including if the patient's name was changed, noting that the name used by the clinic had to match the named used by the insurance company at that time in order to process the insurance payments. She noted that the victim's address on the August 21 record, which related to the victim's scabies diagnosis, was listed as 885 Cedar Hurst Lane.

The defendant recalled Investigator Ramsey, who testified that he first interviewed the defendant on August 17, 2017, and he interviewed him a second time on September 8, 2017. At the time of the first interview, the defendant and his family had

-5-

lived at the Tanglewood residence for a few months.

At the close of the evidence, the jury convicted the defendant of the purported lesser included offense of child abuse. After a sentencing hearing, the trial court sentenced the defendant to three years' incarceration. Following a timely but unsuccessful motion for a new trial, the defendant filed a timely notice of appeal, arguing error in the charge to the jury, insufficiency of the evidence, and error at sentencing.

## I. Sufficiency

The defendant argues that the evidence was insufficient to support his conviction of child abuse because the State presented no evidence of injury or harm to the victim. The State concedes that the evidence failed to establish any injury to or deleterious effect on the victim.

Sufficient evidence exists to support a conviction if, after considering the evidence—both direct and circumstantial—in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). This court will neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Dorantes*, 331 S.W.3d at 379. The verdict of the jury resolves any questions concerning the credibility of the witnesses, the weight and value of the evidence, and the factual issues raised by the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As relevant to this case, the Code provides that

(a) Any person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury commits a Class A misdemeanor; provided, however, that, if the abused child is eight (8) years of age or less, the penalty is a Class D felony.

(b) Any person who knowingly abuses or neglects a child under eighteen (18) years of age, so as to adversely affect the child's health and welfare, commits a Class A misdemeanor; provided, that, if the abused or neglected child is eight (8) years of age or less, the penalty is a Class E felony.

T.C.A. § 39-15-401(a)-(b). Our supreme court has held that child abuse and child neglect, although contained in the same statute, are two distinct offenses. *See State v. Ducker*, 27 S.W.3d 889, 896 (Tenn. 2000) ("Tennessee's child abuse and neglect statute may be broken down into two classifications, abuse and neglect, each of which have both a conduct and a result element."). Specifically, "[c]hild abuse requires that: (1) a person knowingly 'treat in such a manner' a child under eighteen years of age; and (2) the child sustains an injury," whereas "[c]hild neglect requires that: (1) a person knowingly neglect a child under eighteen years of age; and (2) the child's health and welfare are adversely affected." *Id.*

> Here, the trial court instructed the jury as follows:
>
> > Any person who commits the offense of child abuse is guilty of a crime. For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:
> >
> > Number one. That the defendant knowingly abused or neglected a child under thirteen (13) years of age so as to adversely affect the child's health and welfare; and that the child was eight year[s] of age or less.[2]

In rendering its verdict, the jury announced "We, the Jury, find the defendant guilty of child abuse," and the defendant's judgment form identifies the conviction as "CHILD ABUSE AND NEGLECT (8 and under)," a Class D felony under Code section 39-15-401. Because the trial court's instruction to the jury enumerated the elements of child neglect rather than child abuse, the defendant's conviction can only be for child neglect, although erroneously identified as child abuse. A conviction for child neglect of a child under the age of eight is a Class E felony. T.C.A. § 35-15-401(b).

> We begin by noting that "[t]o sustain a conviction of a lesser-included offense, the proof must be sufficient to support each and every element of the conviction offense." *State v. Parker*, 350 S.W.3d 883, 909 (Tenn. 2011). Both child abuse and child neglect require an element of actual harm to the victim. T.C.A. § 39-15-401(a); *Ducker*, 27 S.W.3d at 896. Child abuse requires that the victim suffer an injury, *see* T.C.A. § 39-15-401(a), which may include "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty," *id.* § 39-11-106(a)(2). As to the offense of child neglect, as charged in this case, our supreme court has held "that before a conviction for child neglect may be

---

[2]     We will address the propriety of the trial court's instruction below.

sustained, the State must show that the defendant's neglect produced an actual, deleterious effect or harm upon the child's health and welfare." *State v. Mateyko*, 53 S.W.3d 666, 671-72 (Tenn. 2001).

We agree with the parties that the evidence adduced at trial failed to show that the victim suffered any injury, harm, or deleterious effect as a result of the defendant's conduct. The victim did not testify to experiencing any pain or discomfort, and he said that he asked the defendant to stop touching him only because he "figured out that it was not right to do." Likewise, the State presented no evidence of any emotional or psychological harm to the victim.

Moreover, the State presented no evidence at trial of an act of neglect by the defendant. Black's Law Dictionary defines "child neglect" as "[t]he failure of a person responsible for a minor to care for the minor's emotional or physical needs." *Child Neglect*, BLACK'S LAW DICTIONARY (11th ed. 2019). This court has previously found that child neglect includes conduct such as the "refus[al] to provide necessary medical, surgical, institutional or hospital care" for a child, imposing upon a child "such condition of want or suffering or . . . improper guardianship or control as to injure or endanger the morals or health of such child or others," or "deprivation of services by the caretaker which are necessary to maintain the health and welfare" of the child. *State v. Adams*, 24 S.W.3d 289, 295 (Tenn. 2000) (construing the definition of neglect in the child neglect statute to be consistent with the definitions in other parts of the Code) (citing T.C.A. § 37-1-102(b)(12)(D), (F); *id.* § 37-5-103(8)(D), -103(8)(F)). Here, the State did not present any evidence of the defendant's failure to act or deprivation of care for the victim.

Consequently, the evidence was insufficient to support a conviction of child abuse or child neglect. Although the evidence was insufficient to support a conviction of either child abuse or child neglect, the evidence was sufficient to support a conviction of simple assault by offensive touching, a Class B misdemeanor. *See State v. Swindle*, 30 S.W.3d 289, 293 (Tenn. 2000), *overruled on other grounds by State v. Locke*, 90 S.W.3d 663 (Tenn. 2002) (holding "that Class B misdemeanor assault is a lesser-included offense of aggravated sexual battery"). A conviction of Class B misdemeanor assault requires proof that the defendant "[i]ntentionally or knowingly cause[d] physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." T.C.A. § 39-13-101(a)(3). The evidence that the defendant touched the victim's penis underneath his clothes satisfies these elements. Accordingly, we reverse and vacate the defendant's conviction of child abuse and impose a conviction of Class B misdemeanor assault. We remand the case to the trial court for sentencing on the modified conviction and the entry of an amended judgment reflecting a conviction for Class B misdemeanor assault. *See Parker*, 350 S.W.3d at 910 (vacating a conviction of second degree murder and remanding "to the trial court for amendment of the judgment order to

reflect a conviction of reckless homicide").

## II. Jury Charge

As explained in the preceding section, the evidence is insufficient to support the conviction offense of child abuse or neglect. The defendant has raised issues of trial error relative to the jury instructions which we find to have merit. In the interest of completeness, we address these issues.

The defendant lodges two attacks on the trial court's charge to the jury. First, he argues that the trial court erred by instructing the jury that child abuse was a lesser included offense of aggravated sexual battery in this case because the State presented no evidence of harm or injury to the victim. Next, he contends that the trial court gave an incorrect instruction of the law regarding child abuse. The State concedes that the trial court erred in instructing the jury on the offense of child abuse.

An accused's constitutional right to trial by jury, *see* U.S. Const. amend VI; Tenn. Const. art. 1, § 6, encompasses a right to a correct and complete charge of the law, *see State v. Teel*, 793 S .W.2d 236, 249 (Tenn. 1990). The trial court has a duty "to give a complete charge of the law applicable to the facts of a case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986); *see Teel*, 793 S.W.2d at 249; *see also* Tenn. R. Crim. P. 30.

The legal accuracy of the trial court's instructions is a question of law subject to de novo review. *See Troup v. Fischer Steel Corp.*, 236 S.W.3d 143, 149 (Tenn. 2007). The propriety of a given instruction is a mixed question of law and fact to be reviewed de novo with a presumption of correctness. *Carpenter v. State*, 126 S.W.3d 879, 892 (Tenn. 2004); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

Here, over the objection of the defendant, the trial court instructed the jury that, if they found the defendant not guilty of aggravated sexual battery, they "shall proceed to determine whether the defendant is guilty or not guilty of a lesser included offense of child abuse." As stated above, the trial court instructed the jury as to the elements of child neglect despite referring to the offense as child abuse.

An offense is considered a lesser included offense if it contains all of the statutory elements of the offense charged, if it involves the facilitation, attempt, or solicitation of the offense charged, or if it is specifically designated as a lesser included offense by statute. T.C.A. § 40-18-10(f). An offense is also considered a lesser included offense if it differs from the charged offense only in that it requires a less culpable mental state or requires a less serious harm or risk of harm to the same victim. *See State v. Howard*, 504 S.W.3d 260, 268-75 (Tenn. 2016) (citing *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999)).

-9-

Additionally, Code section 39-15-401 provides that child abuse and child neglect "may be a lesser included offense of any kind of . . . sexual offense, if the victim is a child and the evidence supports a charge under this section." T.C.A. § 39-15-401(f). Importantly, "the trial judge shall not instruct the jury as to any lesser included offense unless the judge determines that the record contains any evidence" that, when viewed "liberally in the light most favorable to the existence of the lesser included offense without making any judgment on the credibility of evidence," "reasonable minds could accept as to the lesser included offense." *Id.* § 40-18-110(a). The trial court must "also determine whether the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser included offense." *Id.*

As we have indicated above, the State did not present any evidence of any injury, harm, or deleterious effect to the victim. Because the evidence presented at trial was legally insufficient to support a conviction for either child abuse or child neglect, the trial court should not have instructed the jury on either offense. *See id.* We also observe that the evidence adduced at trial did not support an instruction for child neglect because, as discussed above, the State did not present evidence of conduct constituting neglect by the defendant. Consequently, the trial court should not have instructed the jury on child abuse or child neglect as a lesser included offense of aggravated sexual battery, and we would reverse the defendant's conviction for child abuse were we not reversing the conviction for insufficient evidence.

Finally, we hold that, even if the evidence warranted an instruction for child abuse as a lesser included offense of aggravated sexual battery, the instruction provided by the trial court for that offense included the elements of child neglect instead of the elements of child abuse. As we explained above, child abuse and child neglect are distinct offenses, "each of which have both a conduct and a result element." *See Ducker*, 27 S.W.3d at 896. The trial court identified the instructed offense as child abuse and sentenced the defendant for the offense of child abuse. Because the record indicates that the trial court intended to instruct the jury as to the offense of child abuse, the court's instruction was an incorrect statement of the law, and, in consequence, we would reverse the defendant's conviction on this ground were we not reversing for insufficient evidence.

### III. Sentencing

Although we have already determined that the defendant's conviction must be reversed, we will address his sentencing issue to facilitate further review.

The defendant contends that the trial court erred by ordering that he serve the entirety of his three-year sentence in confinement. The State did not address this issue in

its appellate brief.

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise* 380 S.W.3d at 706 n. 41 (quoting T.C.A. § 40-35-210(e)). The abuse-of-discretion standard of review and the presumption of reasonableness also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Although the trial court must consider the defendant's potential for rehabilitation in determining whether to impose an alternative sentence, *see* T.C.A. § 40-35-103(5), "[c]onvicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation" are not considered favorable candidates for alternative sentencing, *id.* § 40-35-102(5)-(6)(A).

That being said, the imposition of a three-year sentence in this case mandated the trial court's considering probation as a sentencing option. *See* T.C.A. § 40-35-303(a) ("A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less . . . ."). Traditionally, the defendant has borne the burden of establishing his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. § 40-35-303(b). Such a showing required the defendant to demonstrate that full probation would "subserve the ends of justice and the best interest[s] of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 297 S.W.2d 78, 81 (1956), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000)).

When a trial court orders confinement and therefore rejects any form of alternative sentencing such as probation, split confinement, or periodic confinement, it must base the decision to confine the defendant upon the considerations set forth in Code section 40-35-103(1), which provides:

(1) Sentences involving confinement should be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant; . . . .

T.C.A. § 40-35-103(1).

Here, the trial court sentenced the defendant as a Range I offender for the Class D felony offense of child abuse. However, as we explained above, the trial court instructed the jury as to the elements of child neglect, a Class E felony, and, in consequence, that is the charge for which the jury rendered a guilty verdict and the charge for which the defendant should have been sentenced. The sentencing range for a Range I offender convicted of a Class E felony is "not less than one (1) nor more than two (2) years." *Id.* § 40-35-112(a)(5). Accordingly, the defendant's three-year sentence was outside of the permissible range, and, had we not reversed his conviction, he would be entitled to a new sentencing hearing.

As to the manner of service of the defendant's sentence, the trial court found that a sentence of full probation would "unduly depreciate the seriousness of the offense," stating that "there should be some punishment." This statement indicates that the trial court did not consider a sentence of full probation to be a form of punishment. Our legislature, however, has seen fit to make child neglect a probation-eligible offense. *See id.* § 39-15-401(b) (identifying child neglect of a child under the age of eight as a Class E felony); *id.* § 40-35-102(6)(A) (providing that a defendant who is a "standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing"); *id.* § 40-35-303(a) (not including child abuse among those offenses for which probation is not available as a sentencing alternative). Moreover, a denial of alternative sentencing based on the need to avoid depreciating the seriousness of the offense requires that "the circumstances of the offense 'as committed, must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring probation.'" *State v. Fields*, 40 S.W.3d 435, 441 (Tenn. 2001) (quoting *State v. Cleavor*, 691 S.W.2d 541,

543 (Tenn. 1985); *State v. Hartley*, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)). Here, the trial court made no finding of whether the defendant's conduct met the standard articulated in *Fields*.

Additionally, as to whether confinement was particularly suited to provide an effective deterrent in this case, the trial court said, "I am hoping and thinking that it would." The court made no finding, and, indeed, no evidence was presented, on the need for deterrence of similar offenses. *See State v. Hooper*, 29 S.W.3d 1, 10 (Tenn. 2000) (stating that when a sentence involving confinement is based solely on the need for deterrence, the record must reflect "that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes"). Because the trial court failed to consider the factors articulated in *Fields* and because no evidence supported a finding of the need for deterrence, the trial court erred by ordering confinement on the basis of Code section 40-35-103(1)(B).

*Conclusion*

We hold that the evidence was insufficient to support a conviction of either child abuse or child neglect but was sufficient to support a conviction of Class B misdemeanor assault. Accordingly, we reverse and vacate the defendant's conviction of child abuse and remand the case to the trial court for a sentencing hearing on the offense of Class B misdemeanor assault and the entry of an amended judgment reflecting the new conviction offense and sentence imposed for that offense.

_____
JAMES CURWOOD WITT, JR., JUDGE

-13-